We just have one case we'll hear this afternoon, and it is 21-605-32, United Natural Foods v. National Labor Relations Board, and Mr. Miscimarra? Miscamarra. Miscamarra, hard C. You're whenever you're up. May it please the Court, my name is Philip Miscimarra, Morgan, Lewis, and Bacchius on behalf of Petitioner, United Natural Foods, Inc., which I will refer to as UNFI. This is a remand for consideration in light of Loper Bright Enterprises v. Raimondo. UNFI continues to assert two issues in this appeal, and Loper Bright relates to the first issue, involving whether UNFI's motion for summary judgment triggered the adjudicatory authority of the National Labor Relations Board, which ended the Acting General Counsel's ability to unilaterally order the complaint's withdrawal. In my time here, I'll address two points. First, Loper Bright precludes any deference to the NLRB regarding the summary judgment adjudication issue. Second, to quote Loper Bright, if this Court now determines the, quote, single best meaning of the National Labor Relations Act, applying, quote, all relevant interpretive tools, this Court should hold that the filing of a summary judgment motion upon its receipt triggers the Board's adjudicatory authority, which terminates the General Counsel's ability to unilaterally order a complaint's withdrawal. My first point involves what role can deference play now in this case? Remind me factually, the complaint against the union was withdrawn February 21? That's correct. Well, before the hearing. What about the complaint against the company which was settled? When was that settled? Before the hearing also? Before any, there was no hearing. Actually, there was a motion to sever the CA case, the unfair labor practice case against the company. And then that resolution occurred separate from the proceedings that pertain to the remainder of the case. So it was severed and ultimately settled? Correct. I'm sure in terms of being severed, and I do believe it was ultimately settled as well. My first point involves what role is there for deference in this case regarding the summary judgment adjudication issue in view of Loper-Bright? And the answer is that Loper-Bright precludes any deference to the Board in relation to the summary judgment adjudication issue. And I'll just note the following. Loper-Bright overruled Chevron, which was explicitly relied upon in this Court's prior decision. Under Loper-Bright, the Administrative Procedures Act, Section 706, requires that the courts, quote, decide all relevant questions of law. And then the phrases used repeatedly in Loper-Bright foreclose any room for deference here. Regarding questions of law, for example, Loper-Bright states four things. Courts must, quote, exercise their independent judgment. So if we just do our best reading, we're looking at Section 3, GC's authority, Section 10, the Board, correct? And why isn't, you know where I'm going, UFCW determinative of that in terms of you're accepting it's still binding on us? Is your argument just that a motion for summary judgment changes the picture? Is that essentially it? That's exactly right. What UFCW did do is it established the principle that the dividing line between the General Counsel's unilateral discretion, on the one hand, and the point when that ends, is when the Board's adjudicatory authority begins. And that corresponds to Section 3, Section 10, roughly. But when I look at Section 3, am I right that the GC is given authority to initiate, investigate, and prosecute? So prosecute would normally mean, to me, and I guess it's been interpreted, I think, by the Board back to 1948, including the ability to dismiss as long as there's been no adjudicatory ruling by the Board. Why is that logic wrong? Actually, the principle that has been in place for all of those years in a conventional case, in the absence of a pending summary judgment motion, is that the General Counsel's authority to unilaterally order the complaint's withdrawal only continues until the hearing's commencement. And that's been further refined until the introduction of evidence in the hearing. But, of course, in a motion for summary judgment, to the extent that it's deemed to have merit, number one, it requires the evaluation of the merits by the Board, and that meets the dictionary definition of adjudication. And number two, if the Board determines that the summary judgment motion has merit, then there never will be a hearing. But wouldn't the Board have to take some step, wouldn't it, a notice to show cause or transfer it from the ALJ to the Board? It would have to do something to indicate an adjudicatory step or no? Well, under the Board's rules, Judge Higginson, the notion of having the Board first evaluate the merits of a motion for summary judgment, and the idea that that fails to satisfy the definition of adjudication, and then for the Board to take some action to transfer the case to itself, I think demonstrates the fact that that entire mechanism, the way it's been portrayed by the General Counsel and by the Board, it really creates a fiction that defies common sense. And the one thing that's quite clear is if you end up having the Board evaluating the merits of a motion for summary judgment, and the Board's rules provide that the Board clearly has to evaluate the merits of a summary judgment motion upon its receipt. Is there anything in this record for us to know it took any action at all, or are you just saying that we know it had it before, therefore, it might have begun to consider it? Well, in fact, not only is there not anything in the record that indicates what action the Board would take, the only point in time that can be known is that the filing of a motion for summary judgment places the merits of the case before the Board, and the Board's rules provide that upon receipt, the Board's responsibility is to adjudicate the motion. By first evaluating the motion, seeing if it has potential merit, and then the Board's rules provide for other subsidiary steps, including the possible filing of a notice to show cause, and possibly the Board's disposition of the entire case. Let's say the motion of summary judgment does point out weaknesses. At that point, the General Counsel does or doesn't have unilateral authority to think, you know, I don't want to prosecute this. It's weak. I'm going to dismiss it, or I'm going to settle it. Well, the General Counsel, at any time, has... I said unilateral. Okay. Well, unilateral. While the case is under adjudication with the Board, the General Counsel does not have the unilateral ability to order the complaint's withdrawal. So who prosecutes it? Who prosecutes it if the Board's, if the General Counsel decides, you know, it's just too weak? Well, the case, under the hypothetical that you're opposing, a summary judgment motion has been filed and is pending before the Board. And the next step at that point is for the Board to evaluate the merits of the motion. With or without General Counsel? Well, with or without the General Counsel. But the General Counsel's practice, to the extent that it decides to no longer prosecute the case, would be to file a motion with the Board seeking dismissal. And that's what occurs in civil litigation as well, as you know. So, our position is the UFCW case establishes the principle that the dividing line between the General Counsel's prosecutorial discretion, on the one hand, and the Board's adjudicatory authority, is whether or not the adjudicative process or adjudication has already occurred. And, but nothing in the UFCW case dealt with the Board's adjudication based on summary judgment procedures. My second point addresses what is the single best meaning as to whether and when a summary judgment motion triggers adjudication by the Board cutting off the General Counsel's ability to unilaterally order the complaint's withdrawal. And for reasons that I can explain, the single best meaning is that the Board's adjudicatory authority commences upon the receipt of a summary judgment motion, because this is a much more substantial exercise of adjudicatory authority than the start of an administrative law judge hearing. And what I just said is true in three respects. Number one, the receipt of a summary judgment motion, from the receipt of a summary judgment motion, the Board must start evaluating the merits, and evaluating the merits satisfies the dictionary definition of adjudication. Number two, the filing of a summary judgment motion makes the case much more advanced in the NLRB adjudication process than the start of an ALJ hearing. And number three, the Board's evaluation of a summary judgment motion imposes a much greater resource burden on the Board and every other case that's awaiting action by the Board than what occurs when an ALJ hearing starts. And I had the privilege of serving for almost four and a half years as NLRB Chairman and as a Board member sitting on the NLRB. And obviously, the Board cannot function without its administrative law judges who do very important work. But the NLRB has dozens of administrative law judges. Currently, there are 32 administrative law judges in the agency. At the start of an ALJ hearing, most cases are one to two years away from reaching the Board, which would happen if exceptions are filed from the ALJ opinion. And most cases are two to three years or more from being decided by the Board. By comparison, summary judgment motions get filed directly with the Board in Washington, D.C. And as I said before, if the Board grants summary judgment, that's the end of the case. And the NLRB, when fully staffed, only has five members. And if the Board only has three members, which has happened frequently in recent years, because of the quorum requirement, that means every member has to participate in each case that is awaiting a Board decision. There's been a little change. How many right now? How many members right now? Well, right now, Your Honor, there are only two members. So the Board is currently below the quorum requirement. But for a period in excess of a year, during the time that I was serving on the Board, there were only three Board members. And that meant every single case that comes before the Board had to be decided by each member. And I'll just say that this figure has not changed very much from year to year, regardless of administration. Every year, there are only two at the moment. There are only two at the moment. And the General Counsel has just turned over. And the General Counsel has just turned over or is in the process of turning over. But my point is, obviously, once an administrative law judge hearing begins, it's disruptive and expensive for the General Counsel to unilaterally extinguish the case by ordering the complaints withdrawal. But it is much more disruptive and expensive for the General Counsel to unilaterally order a complaints withdrawal after three or four or five Board members and their staffs may have already spent days, weeks, or months evaluating the summary judgment motion that has been filed. And that exact rationale explains why Rule 41A.1 in the Federal Rules of Civil Procedure terminates a plaintiff's unilateral right to dismiss the complaint after, quote, the opposing party serves a motion for summary judgment. And given that Congress decided that the Board should only have five members, which, by the way, increased in 1947 from the original three-member NLRB that was created in 1935, there's no doubt that Congress believed the time of Board members devoted to any type of adjudication is extremely important to protect. And here's my final observation. This Court's prior decision went some distance down the road in support of UNFI's position in this case. Judge Oldham's opinion, in fact, went all the way down the road. And I'll note that we're in agreement with his analysis. But Judge Higginson, your majority opinion also stated, in the event of de novo review, one can reasonably argue the General Counsel might not have discretion to withdraw a complaint after a summary judgment motion has been filed. Loeb or Bright now requires de novo review, and the best reading of the statute is that a summary judgment motion, upon its receipt, ends the General Counsel's authority to unilaterally order the complaint's withdrawal. I'm happy to answer any other questions and reserve the balance of my time. Do you want to speak to the Ninth Circuit opinion, the Boilermaker case? If we were to adopt your position, would that necessarily be splitting with that analysis? Or would you say it's flawed because it was a Chevron deference case, too? I also think that we're dealing here with a case which involves a straight question of law, and the one thing that Loeb or Bright makes very clear, that it's now the Court's job, not only to adopt the single best meaning, or the single best reading, of the statute in connection with any question of law, but the Court also should use all of the interpretive tools available. The Supreme Court said in the interpretive toolkit. But would we be splitting with that, or would you say, well, no, that's not good law because it was interpretive as well? I don't think that the Boilermaker case presents any type of conflict with the outcome that we're arguing for in this case. The hearing had commenced there. Excuse me? The hearing had already commenced in that decision, when the General Counsel withdrew the complaint. That's true, except that case also didn't involve the motion for summary judgment, and the one thing that became clear is, as I indicated before, the commencement of the hearing rule has been refined in connection with cases that don't involve summary judgment for the withdrawal to occur prior to the introduction of evidence in the hearing. But both of the principles that I just articulated have no applicability if you're dealing with a situation that involves adjudication of a motion for summary judgment. And when I read this from UFCW, it is a reasonable construction of the NLRA to find that until the hearing begins, settlement or dismissal determinations are prosecutorial. That is a statement made in a case that involved, had nothing to do with summary judgment. I think that that case is limited to the facts, and that statement should be interpreted in connection with the specific facts that were at issue in that case. And that was just a settlement by the General Counsel in a case prior to the hearing, and the Supreme Court in UFCW said that that was acceptable. That doesn't have any limiting force, we think, in this case. Thank you, counsel. You still have rebuttal time? Thank you. Okay, we have split time. Ms. Beard for the Board, 13 minutes. Good afternoon. Heather Beard for the Labor Board, and we're asking that the court again deny UNFI's petition for review. And that's an informed position current today. The General Counsel hasn't had any changed positions on this case that you know of?  Who is the General Counsel? Right now, there is not an acting General Counsel. And so the court's jurisdiction over this case and its review of the Board's decision are provided for under Section 10F of the Act. I'm sorry, can we pause for a second? I'm confused. So there's two Board members, and there's no acting General Counsel. So who do you represent? I represent, under Section 10F of the Act, the Board's decision in my role as Board Counsel in the Division of Enforcement. And I'm here today to argue in support of the rationale provided by the Board. But I guess who's the client instructing you on the positions that you're taking? This, I want to state that my client is the National Labor Relations Board, and I'm here in my role as the Board Counsel in the Division of Enforcement. We don't know of any precedent that would hold that any temporary vacancy in the office of the General Counsel or, you know, even any lack of a Board quorum has any effect on the proceeding in this case. I'm not aware of anything. So I'm here today to discuss and explain and ask that this court deny UNFI's petition for review. But when you're having these meetings in Washington to determine your litigation position, you have no General Counsel to consult, or acting General Counsel, or quorum of a Board. I don't. Is this just staff? I don't mean that to be, I'm genuinely not being critical. I'm just trying to understand who it is that you are representing. Right. So what I'm prepared to say, and I don't have anything to add, is that in my role as the Board Counsel in the Division of Enforcement, I'm arguing in support of the rationale provided by the Board in its decision, and we're not aware of any precedent that would hold that I'm not able to do that or that we're not able to do that in this case. So the legal question is how does the NLRA divide prosecution from adjudication? Yes. Well, the question in this case is we're here, again, to determine the applicability of Loper-Bright to the issues at hand. And as we said in our briefing, we believe that your original decision, because of stare decisis, which is another part of what Loper-Bright was talking about, because of stare decisis, we believe that the court in Loper said that you can make the same decision based on the holding of UFCW. This case, in the first round, went up, en banc petition filed, end up cert. If I remember, the Solicitor General's opposition to cert did say that it should be DVR'd if Loper-Bright came out the way it did. Well, one quibble with that, it said that we should hold the case for the decision in Loper. Nobody told the case. It didn't say if Loper-Bright came out the way it did that there would be any sort of – It didn't? No. It just said that there – it said that – Okay, so Chevron's gone though, right? Correct. So now we're just going to be looking at the statute. Why don't you – and you began to talk about UFCW still binding, but their response to that is the court didn't actually resolve this situation. In other words, they're not disagreeing with UFCW, as I understand it. Your friend opposite is just saying that once a summary judgment motion has been filed, that moves it into adjudication. I have a response to that. We think that, as the Supreme Court said in Loper-Bright, the holdings prior to the decision in Loper-Bright, of course, when an agency has taken the same action, stand despite the decision in Loper-Bright. And in this case, the same action was taken by the general counsel. It might be for a different reason. In this case, the general counsel dismissed the complaint before the hearing in UFCW. The complaint was dismissed before the hearing due to a settlement, and here it was dismissed before the hearing because the general counsel decided that the complaint did not have merit. Counsel, when was the summary judgment motion filed in UFCW? There was no summary judgment motion in UFCW. So how can you say it's the same fact? Well, it's the same agency action. That's what Loper talks about. So you think anytime a dismissal, that's the agency action? No, I think that in this particular case, given the holding of UFCW, which this panel originally correctly, in our view, found, that the prosecutorial discretion of the general counsel had not become adjudicatory. If the board had transferred the matter to itself under 102.50, could the general counsel dismiss it then? That is a question the board did not decide in this case. The board found that in a situation where it had not, and again, to address my friend on the other side's argument, anything about the board's rules and regulations is not something that's addressed by Loper, right? Counsel, I appreciate that very much, but I'm asking you a question about how the board's regulations work, and I'd be grateful if you could answer it. If the board had transferred the matter to itself under 102.50, could the general counsel dismiss the complaint then? That would be, I don't know the answer. My client, the board, had not in this case. In fact, they dropped a footnote that said this is not, they're not making that particular holding on those facts. In this case, it was very true that, as they said in UFCW, there can be a step prior to start the process, and this is a step, but it did not start adjudication. 102.24b says that upon receipt, the board can act on the summary judgment motion. The board may deny or it may grant a notice to show cause. That's correct, and the board interpreted its own regulations, as this court said, in its original decision, and from the GVR, this court is free to retain its original decision, and we think that, as you found, as the majority of the panel found respectfully, that this was, you know, this was something that was within the prosecutorial discretion because there had not been any action taken up by the board, and my friend can talk about what experiences were like at the board prior and what kinds of things staff did. Of course, none of this is in any of the papers that we have. However, here, all we know is that the board itself read its own rules and regulations and came to the conclusion that the prosecutorial discretion, very consistent and squarely within UFCW, that the prosecution had not ended and adjudication hadn't happened. So this is very awkward for both of us because I'm not sure who you're speaking on behalf of, but can you help me understand, at least from your perspective, when does the hearing start such that the prosecutorial discretion ends? Sure. I just, I can answer that question, but I'm concerned about your first part of your question.  Okay? To the extent you're concerned about that, I can submit a post-argument letter. I mean, I'm standing up here as an attorney in the Division of Enforcement Litigation and that, the Associate General Counsel of the Division of Enforcement Litigation, and so I am here today representing the National Labor Relations Board in that capacity, and there's been nothing indicating that I should not or that we, I do not have the same client I've had for all the years that I've worked at this. But we're talking about decisions made by the General Counsel, right, which could obviously be made differently by a different General Counsel, and you don't have one. Well, this decision was made already, though, Judge. This decision was made, and we have a board decision, and that's why we're here. Very good. Rather than continuing on, why don't we just focus on this question? Okay. When does a hearing begin such that the prosecutorial discretion ends? When there, the board has said that when the hearing opens and evidence has been introduced. That is what the board has said. And in this case, like in, you know, any of the cases that we've talked about, and Judge Higginson talked about the Boilermakers case, the General Counsel can dismiss without any review when the General Counsel does it before the hearing opens. That is a bright-line rule. What if the board, upon receipt under 102.24b, denies the motion? Okay. No hearing, no evidence. If the board had, if the board had. Or issues a show-causal. No, it's not that there wouldn't be a hearing. This was a motion for summary. There wouldn't be a hearing, but if the motion was denied in this instance, then what that would mean is we would go, and there would be a hearing. This was a motion for summary judgment by the respondent. Could the General Counsel dismiss the complaint then? There was an action. But if there was an action by the board, this is a much tougher case. The board itself recognized that in this case there hadn't been anything like that, and therefore, in this case, there had not been adjudication. I'm asking for your position, which is imagine that there was an action by the board under 102.24b of any kind. Right? There's several listed in the regulation. Pick your favorite. Could the General Counsel dismiss the complaint then? When the board under 102.24 did, I'm just making sure I understand the question, either when it says it may deny the motion, and it also says that it may deny the motion for summary judgment, or it might grant it. If it had taken an action, then I would say that's, as the board said, a different matter, a different case. It might not be able to. But this is not what was presented in this particular case, and I think that under UFCW, as this court originally said and is free to still do, UFCW is stare decisis on this. Of course, there's no summary judgment motion. We've established that. Correct. Yes, that's correct. It's a different reason that the General Counsel dismissed it, absolutely, but it's the same agency action. Right. So where are we on transferring the case to itself? Is that necessary or sufficient under 102.50? It's definite. I mean, in this decision, the board said that it is necessary because if it hasn't transferred, it's necessary but not necessarily sufficient. Correct. It didn't transfer at here, and therefore, because it was necessary, the board found under its own rules and regulations and consistent with UFCW that it had not been prosecutorial. So a lineup, I guess I've heard a bunch of moments it could be. Boilermakers, it's not just hearing. It's hearing plus evidence, correct?  Supreme Court UFCW says hearing. Aligned for sure is prior to the hearing. Then what you're discussing now would be any number of actions the board would take, but no action took place in this case. Correct. The board did not take action in this case. I think you're being asked to give an opinion on the hypothetical of if there were a full board action in the case. Yeah, then I agree with my friend on the other side. Once the board has taken up an action or once the ALJ, once evidence has gone far in the hearing, then yes, then there could be an adjudication. I'm saying that that, I understand that hypothetical, but that is not what happened here, and what happened here is so far from that that as the UFCW Supreme Court held in that case, that without a hearing opening, there is not adjudicatory, it has not become adjudicatory. And I think that that stands. I think that it is stare decisis here, and I think this court can resolve the case and should resolve the case the same way that it did before, which is on a read of the board's rules and regulations. Under its regulations, the board hadn't taken anything up to adjudicate yet, and that's all the court needs to decide here is that scenario under those facts. We have a few seconds left, but if we could get back to just the language of the statute. Am I right to be looking at Section 3 and Section 10? Yes, Section 3. So Section 3, prosecutorial authority includes what? There's no discussion in the statute of any of these interstitial steps, is there? Correct. Okay, so this isn't either way, but just tethered to Section 3, what are you focused on? The prosecution of the complainant. Which is a pretty capacious term. Right. So a lot could fit in it, a lot not. One might think prosecution would involve presenting evidence at a hearing, right? Well, right. I mean, I should point out, LOPA is more nuanced than simply saying that every single agency case is reviewed de novo or for the best read, and we say that LOPA, the stare decisis part should resolve the case, okay? But in terms of reading the statute, I mean, there are cases in which, you know, LOPA recognized that agencies are able to, you know, have delegated authority and they're able to then make decisions that do, in fact, get some form of lesser deference. And, you know, we didn't argue that in this case, but I just wanted to point that out. This isn't, you know. Okay, your red light's on. My red light's on. But thank you for coming down here and arguing again. Thank you. And we'll hear from Mr. Is it, I'm going to pronounce it correctly, Dalmat? Nailed it. I nailed it. Wow, that's rare. Good afternoon, and may it please the court. Darren Dalmat on behalf of the intervening Teamsters Unions. I'd like to begin with the discussion about LOPA-Bright. My friend from UNFI says that LOPA-Bright controls this case, and yet I did not hear him make an argument about what language in the statute actually compels the conclusion that he seeks. I would like to offer this court some statutory language that I don't think has been discussed so far today, but I think provides us some guidance for what we should look to. Let me ask you one question. It's a bit beyond what you just limited your argument to, but bear with me. What prompts the scheduling of a hearing? In general, I believe it's the regional director sends it to the Office of Administrative Law Judges, and that office schedules the hearing. So a hearing had been scheduled in this case. Initially, but it was then extended until April 3rd, I believe, if memory serves, on a motion. April 6th, I apologize. What do you mean? After Acting General Counsel Orr was installed, I believe there was a motion by my clients to reschedule the hearing. That motion was granted, and the hearing was set by order on February 4th, 2021, to commence on April 6th, 2021. Okay. So the sequence was they scheduled a hearing, but you hadn't reached that date for the other hearing. Correct, Your Honor. Okay. The complaint was withdrawn about two months prior to that hearing. It was withdrawn on February 24th, and the hearing was set for April 6th. Okay. So what happens when you just schedule a hearing for four months hence? What internal machinery is turning then by that event? Anything? That may be a better question for either of my colleagues. I represent unions and am not quite as privy into the internal workings of the agency. I recognize that you have gotten beyond what your stated purpose was. I apologize, Your Honor. If I may turn to the statutory language, though. So the third sentence of 10B indicates that any such complaint, meaning a complaint on an unfair labor practice complaint, may be amended by the agent conducting the hearing, namely the ALJ, at any time prior to the issuance of an order based thereon. And so what I take from that is that there are really two different categories. Section 3D is quite clear that the prosecutor, the general counsel, has discretion over investigation, issuance of complaint, and prosecution of a case. And 10B is quite clear that the board, or 10C is even more clear, that the board issues factual findings and orders, opinions on statutory violations. And so I think the key question is what happens in the overlap? What happens when adjudication and prosecution occurs at the same time? And what that third sentence of 10B indicates is that once the board, once a hearing has begun, then an amendment can only happen with the permission of the ALJ, who stands in for the shoes of the board. And so what is the analog in the motion for summary judgment context? Because obviously we do not have a hearing here. We have a motion for summary judgment. And I submit, Judge Oldham, you had asked questions about the order for show cause or the transfer. I submit that that is the moment that is the beginning of the board taking over the case. And so that is the analog that the regulations provide that we should look to. So I agree with you on the statute. I agree the statutory text is interesting, but you've lost me in a couple different ways. So I've got the third sentence in front of me. Number one, it says the complaint is being amended by a member, agent, or agency conducting the hearing. So in your example, that's the ALJ. Yes, Your Honor. That doesn't say that a motion can be filed and that it can be amended by the general counsel or that it can be amended by the Teamsters or anybody else. It says that the amendment is being done by the ALJ, point one. And point two, and I think what's really interesting, is at no point does this say after the hearing has begun or whatever. The relevant text that you read and is actually from the statute itself says at any time prior to the issuance of an order based thereon. So there's no — the whole point of the board's position in this case is that somehow we know a hearing has started because a lawyer from the NLRB will tell me that that's when the hearing started. And that's what's going to cut off somehow. We don't actually know. We've been through this for several minutes on the top side of this argument. We don't actually know when that is, but just trust us. At some point, the hearing will start and the general counsel's power will dissipate. But this text doesn't really help us, does it? If anything, it suggests that there's power in the ALJ, that the ALJ can make the amendments, and maybe that's derogatory of the general counsel's powers. Is that what you're saying? Somewhat. And let me offer you some more text that might be helpful. Sure. 29 CFR 102.17 is the regulation on amendments, and it fleshes out that third sentence. And what it says is, and I'm going to quote, a complaint may be amended upon such terms as may be deemed just prior to the hearing by the regional director issuing the complaint, semicolon. At the hearing and until the case has been transferred to the board pursuant to 102.45, upon motion by the administrative law judge designated to conduct the hearing, semicolon. And after the case has been transferred to the board pursuant to 102.45, at any time prior to the issuance of an order based thereon, upon motion by the board. Can I pause you? Because I didn't hear you say general counsel. I heard you say regional director. I heard you say ALJ. I may have missed it. I'm sorry. I don't have it in front of me. I didn't say it, but regional director is the agent for the general counsel. Okay. So what this says is any time before the hearing, the regional director can withdraw or dismiss sua sponte. By instructing the general counsel to do it? Sorry? By instructing the general counsel to do it? The other way around. Sorry, sorry. Yeah. Yes, Your Honor. The general counsel can instruct the regional director to do it? Correct. And that's all prosecutorial discretion? Correct. Correct. And so my light is off, but can I make one more point? You can finish, yes. Thank you. And so I just want to reiterate a point that my colleague from the board made. This is page 126 of UFCW. It says, it is true that the filing of a complaint is the necessary first step to trigger the board's adjudicatory authority. However, until a hearing is held, the board has taken no action. No adjudication has taken place. So my view is that when my friend from UNFI filed its summary judgment, that is comparable to the necessary first step to invoke the board's authority. They invoked it, but the board had not yet exercised that authority, and there's no evidence until the board issues a show cause order or a transfer order that the board, acting with the powers of the quorum 3B, I believe it is, that three board agents acted as a collective to actually exercise adjudicatory authority. And until the body comes together and exercises its quorum-filled powers, no adjudication or, in the words of my friend, Mr. Miscamera. Your time is up. Thank you, Your Honors. Can you add a minute to rebuttal time? I think it's rebuttal, right? Yes. Yeah. Thank you, Your Honors. I'll just make three points. With respect to the general counsel's position that under Loeb or Bright the UFCWK should be considered binding as a matter of stare decisis, it's important to focus on exactly what the Supreme Court in Loeb or Bright said. In Loeb or Bright, the Supreme Court only stated that precedents that had previously applied deference upholding specific agency actions remain good law. The specific agency actions in the UFCW case involved a pre-hearing settlement which resulted in the complaint's withdrawal. As I indicated before, that case had nothing to do with summary judgment. The second point I'd like to address is some of the questioning that occurred with the general counsel about, well, what would happen if the board had transferred the case to itself? What are we to make from the rules that suggest the board receives a motion for summary judgment and then additional things happen? Our position is that the UFCW case clearly establishes one thing, which is the start of adjudication is what terminates the general counsel's unilateral authority to dictate the complaint's withdrawal. The notion, once a summary judgment motion has been filed, that adjudication only begins later, after the board has evaluated the merits, and then after the board takes some additional steps, including the fiction, that the board can evaluate the case and then subsequently transfer the case to itself. That position is contrary to the basic principle in UFCW that the start of adjudication, not the completion of adjudication, the start of adjudication, is what ends the general counsel's unilateral authority. And then with respect to my opposing counsel for the union's attempt to parse the statutory language in Section 10B, we agree and believe that Section 10B generally supports UNFI's position in this case. That was addressed by Judge Oldham's dissenting opinion as well. But the clearest and most direct way to determine the single best meaning about the summary judgment adjudication issue, from our perspective, is to apply the adjudication dividing line, which was the holding of UFCW. And that case, I think, as applied in this case, means a summary judgment motion places the merits of the entire case before the board. The board's evaluation of the motion constitutes an adjudication upon receipt of the motion. If the motion has merit, a hearing will never even occur, and that precludes a reasonable conclusion that the touchstone for adjudication must always be a hearing. And the reason that that precludes such a conclusion is that a board order granting summary judgment decides the case without any hearing. The one other question that you asked, Judge Oldham, is if we regard the UFCW case as being completely binding as to the principle that the general counsel can do whatever the general counsel wants to do until there's been a hearing, I think that means even after the board completes the adjudication of summary judgment, the general counsel can still do whatever it wants because there's been no hearing, and that's an untenable outcome. Thank you very much for your time. Thank you, counsel. Thank you all for coming. The case is submitted. We have no other cases, so that finishes the day.